IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | | |
|---|---|---|
| Sarah P.[1], | ) | Case No.: 3:17-cv-00932-JE |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[2] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

George J. Wall
1336 E. Burnside St., Suite 130
Portland, OR 97214
    Attorney for Plaintiff

Billy J. Williams, United States Attorney
Renata A. Gowie, Assistant United States Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Sarah Moum
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.
[2] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d).

OPINION AND ORDER -- 1

JELDERKS, Magistrate Judge:

Plaintiff Sarah P. (Plaintiff) brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) under the Social Security Act (the Act). For the reasons that follow, the Commissioner's decision is AFFIRMED.

## Procedural Background

Plaintiff protectively filed her application for SSI on February 4, 2014, alleging disability beginning April 1, 2004. Tr. 17. The Commissioner denied her application initially and on reconsideration. Plaintiff appeared at hearings on June 26, 2015 and October 13, 2015, before Administrative Law Judge (ALJ) Rudolph M. Murgo. Tr. 39. Plaintiff was represented by counsel and testified; Gary Jesky, a vocational expert (VE), also testified. Tr. 39-70. The ALJ issued an unfavorable decision on October 30, 2015. Tr. 30. Plaintiff appealed, and the Appeals Council denied Plaintiff's request for review. Tr. 1-3. Plaintiff now timely appeals the Commissioner's final decision.

## Factual Background

Plaintiff was born in 1972 and was 40 years old on the application filing date. Tr. 28. She took special education classes in high school and later achieved a GED; she also completed training as a Certified Nursing Assistant (CNA). Tr. 320. She has worked as a caregiver, cook, and receptionist. Tr. 320. Plaintiff alleges disability due to post-traumatic stress disorder (PTSD); clinical depression; anxiety; multiple personality disorder; degenerative joint disease; loss of feeling in both her hands; chronic pain; chronic sinusitis; attention deficit hyperactivity disorder (ADHD); and attention deficit disorder (ADD). Tr. 319.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920. The five step sequential inquiry is summarized below, as described in *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. § 416.920(e), (f).

<u>Step Five</u>. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. § 416.920(g)(1).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## **ALJ's Decision**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 4, 2013, the date she protectively filed her application for SSI. Tr. 19.

At step two, the ALJ determined that Plaintiff had the following severe impairments: ADHD; Raynaud's disorder; carpal tunnel syndrome; affective disorder; anxiety; and bilateral knee degeneration. Tr. 19. The ALJ found that Plaintiff's amphetamine dependence (in remission); cannabis dependence (ongoing); PTSD; multiple personality disorder; fibromyalgia; and varicose veins were non-severe impairments. Tr. 20.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment as set out in the Listings, 20 C.F.R. Part 404, Subpart P, App.1. Tr. 20-21.

Next, through May 31, 2014, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, except she could:

> lift and carry 20 pounds occasionally and 10 pounds frequently; sit six hours of eight; stand and walk six hours total of eight; perform simple, routine tasks and instructions consistent with SVP 1 or SVP 2; and no public contact.

Tr. 497.

The ALJ found that, beginning June 1, 2014, Plaintiff had the RFC to perform light work except she could:

> lift and carry 10 pounds occasionally and less than 10 pounds frequently; sit eight hours of eight; stand and walk less than two hours total of eight; option to shift position between sitting and standing hourly; never squat, crawl, climb, or crouch; never operate foot pedals or repetitively push/pull with the feet; occasionally twist; balance and stoop less than occasionally (but more than never); frequently grasp, perform gross manipulation, and perform repetitive pushing or pulling with the hands; perform simple, routine tasks and instructions consistent with SVP 1 or SVP 2; and no public contact.

Tr. 22.

At step four the ALJ found that Plaintiff had no past relevant work. Tr. 28.

At step five, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff was capable of performing. The ALJ found Plaintiff could perform the janitor, assembly, and packaging jobs through May 31, 2014, and the circuit board, semi-conductor processor, and assembly jobs beginning June 1, 2014. Tr. 29. Accordingly, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act. Tr. 503.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66

F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and of establishing that a claimant can perform "other work" at step five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40.

## Discussion

Plaintiff alleges the ALJ erred by failing to properly assess limitations related to her carpal tunnel syndrome in the RFC. The RFC is the most a person can do, considering her physical or mental impairments. *See* 20 C.F.R. § 404.1545. The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all of the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. *Id.*; SSR 96–8p *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those

limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001).

Before engaging in an analysis of Plaintiff's legal arguments, the Court will summarize the medical evidence relating to her carpal tunnel syndrome (CTS). On October 8, 2012, an EMG allegedly revealed "moderate median neuropathy at the wrist.[3]" Tr. 665. On October 21, 2012, Plaintiff's treating provider noted that she had not worn her wrist splints as prescribed. Tr. 673. On March 1, 2013, Plaintiff stated that her hands hurt and CTS limited her yardwork activity, and on March 3, 2013, Plaintiff complained that her hands and feet were intermittently numb, discolored, and painful. Tr. 643, 649. Plaintiff's treating provider issued another prescription for a right wrist brace to manage her CTS on March 17, 2013. Tr. 657. In December 2013, Plaintiff was again counseled to use wrist splints on both arms to reduce her symptoms, and Plaintiff's treating provider, Dr. Deryk Zinser, D.O., felt that the "vast majority" of her pain symptoms were tied to her mental health. Tr. 999. In January 2014, Dr. Zinser felt that Plaintiff's wrist splints were not "overly successful" at managing her pain, but noted that Plaintiff exhibited "[n]o obvious swollen joints in the hands [or] wrists." Tr. 1009.

On March 18, 2014, a nerve conduction study confirmed bilateral CTS, and Plaintiff described her pain as "burning" and "aching." Tr. 1021. On April 1, 2014, Plaintiff reported that she went biking and camping earlier in the week. Tr. 1033. On May 7, 2014, Dr. Charles Layman, M.D., found that "clinical as well as electrodiagnostic evidence" supported the diagnosis of bilateral carpal tunnel syndrome. Tr. 1057. On June 25, 2014, Plaintiff underwent a

---

[3] While Plaintiff's treating providers reference this study, the actual EMG is missing from the record. As such, the study is of limited value because its contents cannot be verified and it is unknown whether Plaintiff's treating providers simply repeated what Plaintiff relayed to them. Additionally, it is unclear which wrist allegedly experienced neuropathy.

OPINION AND ORDER -- 7

carpal tunnel release procedure on her right hand and wrist, which significantly relieved her symptoms. Tr. 60, 1310.

Plaintiff reported that, after heavy lifting and gardening in March 2015, her left hand was "essentially unusable," and failed to respond to ice, heat, or elevation. Tr. 1192. On July 29, 2015, Plaintiff underwent a carpal tunnel release procedure on her left hand and wrist. Tr. 1331. The following day, Plaintiff reported to the ER seeking help with pain in her left wrist. Tr. 1354. The ER doctor noted some swelling in the left wrist, but her exam was otherwise unremarkable. Tr. 1354. At the administrative hearing, Plaintiff testified that the left hand carpal tunnel release procedure was not as effective as the procedure performed on her right hand. Tr. 61. She stated that her hand remained swollen, with a prominent scar, six weeks after her surgery. Tr. 61.

The ALJ found that Plaintiff's CTS was a severe impairment at step two. However, the ALJ did not include any handling or manipulative restrictions in Plaintiff's RFC through May 31, 2014. Tr. 22. Beginning June 1, 2014, however, the ALJ found that Plaintiff could "frequently grasp, perform gross manipulation, and perform repetitive pushing or pulling with the hands." Tr. 22.

Plaintiff argues that the ALJ erred by omitting all handling restrictions before June 1, 2014, and further erred by restricting Plaintiff to frequent handling after June 1, 2014. Even assuming, *arguendo*, that the ALJ erred by omitting handling restrictions before June 1, 2014, the error was harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless if it is inconsequential to the ultimate non-disability decision). The ALJ found that Plaintiff could perform the janitor and assembler occupations before June 1, 2014. The more restrictive RFC, limiting Plaintiff to frequent handling and manipulating, can be applied before June 1, 2014, because the janitor and assembler occupations identified by the ALJ

at step five require frequent handling. DOT 323.687-014, 1991 WL 672783; DOT 706.684-022, 1991 WL 679050. Therefore, even if the ALJ erred by failing to limit Plaintiff to frequent handling and manipulating before June 1, 2014, the ALJ still identified jobs in the national economy Plaintiff was capable of performing with the frequent handling and manipulating restriction; the ALJ's bifurcated RFC can be ignored with respect to the lack of assessed manipulative limitations before June 1, 2014. Instead, the more restrictive finding limiting Plaintiff to frequent handling and manipulating is applicable throughout the adjudicatory period.

The Court must next determine whether the ALJ's limitation to frequent handling, manipulating, pushing, and pulling in the RFC is supported by substantial evidence. As a preliminary matter, the Court notes that the ALJ discredited Plaintiff's subjective symptom testimony, and Plaintiff contests the ALJ's finding only in her Reply Brief. There, Plaintiff stated "there is no reason to believe that the ALJ did not find specific testimony regarding her carpal tunnel syndrome to be credible." Pl's Br. 4. This, however, is not supported by the record. If the ALJ had credited Plaintiff's subjective symptom testimony, she would have been found disabled. The ALJ provided numerous clear and convincing reasons to discount Plaintiff's subjective pain testimony, and Plaintiff has not refuted any of those reasons.

Ultimately, the ALJ's interpretation of the record is rational and supported by substantial evidence. Dr. Zinser, Plaintiff's treating physician, opined that Plaintiff was limited to frequent grasping, manipulating, pushing and pulling, and the ALJ gave great weight to the doctor's opinion beginning June 1, 2014.[4] Tr. 1233. Plaintiff was able to perform activities of daily living that conflicted with her allegations of disabling symptoms due to CTS, further bolstering the

---

[4] Plaintiff argues that the ALJ did not specifically mention the handling and manipulating limitations espoused by Dr. Zinser. However, it is apparent that the ALJ considered the doctor's assessed limitations, as they are directly reflected in Plaintiff's RFC. Additionally, the doctor's treatment notes were discussed in the opinion.

OPINION AND ORDER -- 9

ALJ's interpretation of the record. For instance, Plaintiff drove a stick shift car, went on camping trips, rode a bicycle, gardened, and volunteered at her daughter's school. Tr. 23. Additionally, the ALJ also noted that at the hearing, Plaintiff appeared to have used makeup, and a cooperative disability investigative officer observed that Plaintiff displayed no difficulty manipulating a book of plastic covered photomontages, gave a firm handshake with no signs of discomfort, and wrote her signature with a "flexible and flowing motion." Tr. 388. The investigative officer also contacted a restaurant where Plaintiff briefly worked as a hostess in the first quarter of 2015. Tr. 389. Plaintiff alleged that she quit the restaurant job because she became confused and her hands hurt too badly to handle menus, but upon questioning, the owner of the restaurant only confirmed that Plaintiff was confused and frequently arrived late. Tr. 389. Taken individually, such activities do not evince particularly high levels of manipulative functioning; in the aggregate, however, Plaintiff's activities tend to show that she was not overly impaired by her CTS. Furthermore, Plaintiff's CTS was managed with relatively conservative courses of treatment: her physicians recommended that she wear wrist splints -- a recommendation that she did not always comply with -- and the physicians waited several years before recommending that she undergo the carpal tunnel release procedures.

Plaintiff argues that limiting her to frequent manipulative actions is not supported by substantial evidence because her left hand carpal tunnel release procedure, performed on July 29, 2015, was slow to heal and not as effective as the right hand procedure. However, there is little objective evidence that Plaintiff's left hand carpal tunnel release procedure was less effective than her right hand procedure. To the contrary, the record shows that Plaintiff was motivated to exaggerate her pain and symptomology to obtain opiate painkillers. For example, the day after Plaintiff's surgery, she reported to a hospital emergency room and exhibited drug-seeking

behavior. Tr. 1354. Indeed, Plaintiff consistently exhibited drug-seeking behavior throughout the record, and displayed such alarming behavior on occasion that hospital staff called security, and on a separate occasion, a treating provider called the county sheriff. Tr. 608, 795, 1293-94, 1354. While Plaintiff is not disqualified from pursuing a disability claim for exhibiting drug-seeking behavior, in the absence of objective evidence of pain, the ALJ's interpretation of the record is supported by substantial evidence.

Plaintiff essentially argues for a different interpretation of the evidence, but the ALJ's interpretation is rational and cannot be overturned by this Court. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 196 (9th Cir. 2004) (the court must uphold the ALJ's rational interpretation of the record, even if the evidence supports other rational interpretations). Plaintiff asserts that it makes little sense that the ALJ assessed no limitations related to manipulative functioning before June 1, 2014, but imposed limitations after June 1, 2014, when Plaintiff underwent her carpal tunnel release procedures after June 1, 2014. Presumably, the procedures would increase Plaintiff's functioning, rather than support a decrease in her functioning. However, as noted above, even if the restriction to frequent manipulation, grasping, pushing, and pulling were applied throughout the adjudicatory period, the ALJ's error is harmless. As such, there is no basis to remand this case.

## CONCLUSION

The Commissioner's decision is based on substantial evidence and is free from harmful legal error. For the reasons stated above, the Commissioner's decision is AFFIRMED.

DATED this 12th day of October, 2018.

                                             /s/John Jelderks
                                        John Jelderks
                                        United States Magistrate Judge